IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No:

JAY ALLEN FREY,
   Plaintiff

vs.

STEVE REAMS, in his official capacity as Sheriff of Weld County,
NANCY KROLL, in her official capacity as Director of Inmate Services for Weld County Jail,
BOARD OF COUNTY COMMISIONERS FOR WELD COUNTY,
CORRECT CARE SOLUTIONS, corporate medical provider for Weld County Jail,
DR. GEPPERT, employee or contractor for Correct Care Solutions,
CITY OF GREELEY,
TOM NORTON, in his official capacity as Mayor of the City of Greeley,
JERRY GARNER, Chief of Police of the City of Greeley,
GREG THARP, individually and in official capacity as police officer for the City of Greeley,
STEVE DONEY, individually and in official capacity as police officer for the City of Greeley.

**CIVIL RIGHTS COMPLAINT WITH REQUEST FOR TRIAL BY JURY AND CERTIFICATE OF REVIEW**

COMES NOW Plaintiff Jay Allen Frey, by and through counsel, complains against the Defendants and requests a trial by jury as follows:

### I.  INTRODUCTION

1. This is an action under 42 USC Section 1983 to recover for violation of federally protected rights.  Specifically, Plaintiff claims he suffered severe physical injuries and damage from excessive force exerted by police officers during an arrest, and for denial

of medical treatment to properly treat those injuries, by persons acting under the color of state law

## II. JURISDICTION, VENUE, AND NOTICE

2. This action arises under the Constitution and laws of the United States, including Article III, Section 1 of the United States Constitution and 42 USC Section 1983 and 42 USC Section 1988. The jurisdiction of this court is further invoked pursuant to 28 USC Sections 1331, 1343, and 2201;

3. Supplemental pendant jurisdiction is based on 28 USC Section 1367 because the violations of federal law alleged are substantial and the pendent causes of action derive from a common nucleus of operative facts;

4. This case is instituted in the United States District Court for the District of Colorado pursuant to 28 USC Section 1391 because it is the judicial district in which all relevant events and omissions occurred and in which defendants maintain offices and/or reside;

5. Notice of claim was provided to the governmental defendants under the Colorado Governmental Immunity Act in a timely manner;

## III. PARTIES

6. Plaintiff Jay Frey is 51 years old, and has been a resident of the State of Colorado, and a citizen of the United States of America, at all times relevant to this action. He currently resides in Lone Tree, Colorado;

7. Weld County Sheriff Steve Reams, is a public figure responsible for operation of the Weld County Sheriff's Department, and for the Weld County Jail;

8. The Weld County Board Commissioners has authority over the Weld County Sheriff and Weld County Jail;

9. Correct Care Solutions is a medical care provider, and on information and belief was contracted to, and was responsible for, providing medical care to the inmates in the Weld County Jail in the year 2015;

10. On information and belief Dr. Geppert is a medical physician, was employed by or contracted with Correct Care solutions, to provide medical services for the inmates incarcerated in the Weld County Jail in 2015;

11. Nancy Kroll was the Director of Inmate Services for the Weld County Jail in 2015, and responsible to insure medical care was provided to the inmates in that jail;

12. The City of Greeley, Colorado, is a municipality operating under the Council-Manager form of government, and is responsible for the acts, omissions and conduct of the Greeley Police Department;

13. Tom Norton is the mayor the City of Greeley, responsible for the actions of the Greeley Police Department;

14. Jerry Garner, is the chief of the police department in the City of Greeley, is responsible for the hiring, training, monitoring, and discipline of the police officers in that department, and for the actions of the members of that department while on duty;

15. Greg Tharp, is an officer with the Police Department of the City of Greeley, is responsible for his actions, omissions, and conduct as a member of that department;

16. Steve Doney, is an officer with the Police Department of the City of Greeley, is responsible for his actions, omissions, and conduct as a member of that department;

17. All of the above named defendants are proper parties to be sued under 42 USC Section 1983;

18. All of the above named defendants were in the positions described above in 2015;

### IV. STATEMENT OF FACTS

19. On March 18, 2015, at approximately 5:30 PM, Jay Frey was arrested for traffic offenses by officers Greg Tharp and Steve Doney of the Greeley Police Department;

20. The vehicle Frey was driving had become disabled when he was pursued by Officer Tharp, he attempted to avoid arrest by leaving the scene on foot, and was several blocks away from the vehicle, in a residential area of the city of Greeley, when contacted by Officer Tharp;

21. Frey was at the top of a concrete driveway when approached by Officer Tharp, and after a short dialogue between those persons and directions by the officer, including to go "prone", Frey dropped to his hands and knees on the driveway.  Officer Doney had joined Officer Tharp at that point;

22. Officer Tharp struck and beat Frey with his hands and feet and instruments, knocking him flat on the concrete driveway, and bounced his head off that surface several times. It is not known if Officer Doney participated in the beating, but if he did not he failed to restrain or prevent Officer Tharp and thereby acquiesced in and was complicit his behavior;

23. Frey did not attempt to flee, did not physically resist Officer Tharp, or threaten him, in any way during the arrest.  He did not present any immediate threat to the safety of the

officers. The force used by the officers was excessive, without cause, unreasonable, and totally unwarranted;

24. Frey suffered many visible wounds during the arrest and an ambulance was called to transport him to a hospital;

25. Jay Frey was in and out of consciousness much of the time, recalls many tests being conducted at the hospital, and believes he was transported to the Weld County Jail sometime early to mid-morning on March 19, 2015. The police reports indicate Officer Tharp accompanied Frey to the hospital, and was relieved at the end of his shift by Officer Klassen who later transported Frey to the Weld County Jail;

26. Shortly after being placed in the Weld County Jail the morning of March 19, 2015 Frey requested medical attention for his loss of vision and other injuries, including for substantial pain in his eye and body, and continually repeated such need for treatment during his five month stay in that jail;

27. The excessive force used during the arrest of Frey caused extremely severe injury to him. The retina in Frey's right eye was damaged during the arrest. He has been permanently blind in that eye since that time. He has suffered from constant physical pain in his head and right eye, plus much pain in his right shoulder and midsection, since the arrest;

28. Frey suffered an abdominal hernia during the arrest. The Weld County jail refused any treatment for that injury. In about November 2016, shortly after release from a halfway house Frey had surgery on his hernia, which surgery was successful. Upon his first

examination of Frey the surgeon remarked the hernia should have been treated long ago, that it was an emergency situation, and performed surgery the following day ;

29. It was further determined Frey had suffered an injury in his right shoulder. He was not provided surgery or any other treatment for that injury.  He has sought medical relief recently but still suffers pain;

30. It was also determined he had suffered several bruised broken ribs during the arrest. He received no specific treatment for those injuries, and they have apparently healed on their own.  He did, however, suffer many weeks of sharp pain;

31. As soon as he arrived at the Weld County Jail Frey advised the medical staff that he had pre-existing glaucoma in his eyes,  that he had been satisfactorily treating such disease through medication for the past few years, and the loss of vision was not due to the glaucoma.  The medical staff at the jail who treated Frey included Dr. Geppert, who directed much of his care;

32. The Weld County Jail waited 88 days, until June 9, 2015, to seek a specialized professional diagnosis of Frey's loss of vision and other injuries to his right eye. On that date he was transported to the Eaton Vision Clinic located in Eaton Colorado, a 10 to 15 minute drive from the jail. That clinic determined he had suffered injury to the retina in his right eye, that because of the passage of time it was unlikely he would ever regain his vision in that eye, and recommended that he  "Consult with ophthalmologist specializing in vitreo-retinal disease." within two weeks."  He has been advised by nearly all  of the eye treatment professionals who examined him that treatment to restore vision after injury to a retina  should be started within 72 hours;

33. On July 13, 2015 the Weld County Jail transported Frey to Eye Specialists of North Colorado in Greeley.  That clinic diagnosed the damage to the retina and referred him on to another eye specialist, Dr. Arthur Korotkin, Eye Center of Northern Colorado, 1931 65\[th\] Ave., Ste C, Loveland, CO. 80537 (970) 679-000, for surgery and opined it was "most likely" his vision would not get back to normal. On July 27, 2015 Frey was examined by Dr. Korotkin, and on August 13, 2015 that doctor performed surgery on Frey's right eye. Because of the delay in providing necessary medical treatment at that point there was little hope of restoring Frey's vison.  The surgery was necessary to keep the eye from dying. If the surgery had not been performed Frey's eye would have died, become a "fish eye",  and it would have had to be replaced with an artificial eye or Frey would have to wear a patch;

34. As part of the surgery Dr. Korotkin placed a gas bubble in Frey's right eyeball, which bubble was intended to rise up against the retina in the back of Frey's eye when he was face down. The pressure would help heal the damage to the retina;

35. Dr. Korotkin strongly, emphatically and repeatedly directed the deputies who transported Frey that he had to be placed in the medical unit of the jail and remain there for several weeks. That it was necessary that Frey remain in a face down position 50 minutes of each hour for the gas bubble to perform its healing purposes, and follow such procedure for several weeks;

36. Dr. Korotkin also sent several different medications for treatment of Frey's eye and directions for use of the medications, plus he attached a plastic message bracelet to Frey warning that he not be moved;

37. The Weld County Jail treated Dr. Korotkin's directions with deliberate indifference by virtually ignoring several of those orders.  First, Frey was not kept separate in the jail medical unit.  Instead, he was placed in general population which prevented him from lying face down as required for proper treatment, and required that he often stand and move about for meals and other reasons;

38. Second, six days later, on August 19, 2015 Frey was transported to the Weld County Courthouse, where he was sentenced to a three-year term in the Colorado Department of Corrections.  He was transported to and from the courthouse with several other inmates. That again prevented him from adhering to the "face down" direction.  He was also subjected to the social jostling of traveling with several persons, and had to wait until the cases of all the others had been handled.  There is no record the jail advised the court that Frey should not be moved or made any attempt to continue the court date.  Frey objected to being taken to court because of the doctor's orders;

39. On August 21, 2015 Frey was awakened at about 3:00 a.m. and a couple of hours later transported to the Denver Reception and Diagnostic Center (DRDC), a facility of the Colorado Department of Corrections located in Denver, Colorado.  Normally, inmates must wait several weeks to be transported from the county jail to DRDC after they are sentenced.   It appears he was so quickly transferred to rid the jail of the responsibility and costs of caring for him.  Not only was Frey transported in violation of Dr. Korotkin's

orders, but the jail did not send any the medications prescribed for treatment of his eye with him to DRDC, nor did it send any of the instructions for his treatment, nor did it even provide information of his injuries, or surgery, to DRDC;

40. DRDC did listen to Frey's complaints and transported Frey to the Denver Health Services Center the following day, on August 22, 2015 for diagnosis and treatment. He was seen by several different physicians, none of whom had any information about the injury or surgery on his eye, other than as provided by Frey himself. During the many hours he remained at the hospital the physicians were able to contact Dr. Korotkin for information.  Korotkin was extremely upset that his directions for treatment of Frey's eye had not been followed by the Weld County Jail, including that he had been transported a substantial distance. Denver Health Services Center did determine the gas bubble had moved to the front of Frey's eyeball, was no longer providing any healing, and chose to monitor that condition in hopes the bubble would move to the back of Frey's eyeball;

41. Frey was again transported to Denver Health Services Center on one or two occasions in the next two three weeks before he was transferred from DRDC to a DOC facility in southern Colorado.   DOC transported Frey back to Denver Health Services Center for further examination/treatment of his right eye on or about December 23, 2015. His condition had remained the same since first seen at that facility on August 22, 2015. Frey can no longer "see" the bubble in his eye and believes it has dissipated;

42. Frey has been advised by nearly all of the eye professionals he encountered that because he has lost virtually all the vision in his right eye there is an strong expectation,

especially because he had the pre-existing disease of glaucoma, that he will overwork his left eye, and will most likely lose his vision in that eye and become totally blind at some point in his life;

43. Some years prior to this incident Frey had received extensive medical treatment to his eyes, and had excellent eyesight in both eyes before his arrest on March 18, 2015;

44. At all times since contact by Officers Tharp and Doney on March 18, 2015 Frey has suffered constant pain in and about his right eye, as well as pain and other problems with the abdominal hernia (until it was treated in November 2016), and from the damage to the right shoulder;

45. Frey has returned to work with previous employers on a part time basis, mostly doing remodeling work. This work is most difficult because he has lost any meaningful depth perception, is unable to see measurements and other details as he could before the damage to his eye, is now somewhat limited to doing tear-out and rough work, and whatever chores he does requires much more time than before he lost his sight;

46. Prior to being injured on March 18, 2015 Frey was a skilled artist (drawings and sketches) and received payment for much of his work.  He also received much income as a tattoo artist.  He can no longer perform either type of work;

47. In his normal life activities, because he has lost his depth perception, Frey often bumps into objects, is in danger when going down steps if he does not have a handrail, cannot even fill a glass with water without using his finger to measure the depth, and has many similar problems in his every day movements.

48. As a result of the injuries he suffered at the hands of Officers Tharp and Doney, and the denial of necessary medical care, Frey has suffered very significant physical, economic, emotional damages;

49. The named defendants responsible for providing medical attention to Frey in the jail approached his injuries with deliberate indifference, and acted in bad faith to treatment of his injuries;

## FIRST CLAIM FOR RELIEF

### (42 USC Section 1983-Excessive Force)

50. Plaintiff incorporates herein by reference all allegations set forth in the other paragraphs of this complaint as if those allegations were set out explicitly herein;

51. This is a cause of action brought by plaintiff against defendants for deprivation of his constitutional rights within the meaning of 42 USC Section 1983;

52. Plaintiff is a citizen of the United States and all of the defendants to this claim are persons for purposes of 42 USC section 1983;

53. At all times relevant to the allegations herein defendants acted jointly, severally, in corroboration with, and conspiring with, others acting under color of state law;

54. The defendants violated Plaintiff's clearly established constitutional right under the Fourth Amendment to the United States Constitution to be free from excessive use of force during arrest and unreasonably aggressive acts exerted by individuals acting under color of state law during an arrest;

55. Defendants actions as referenced herein were objectively unreasonable in light of the facts and circumstances of the arrest;

56. Defendants acts during the arrest/beating appear to have been motivated by malice or recklessness with the apparent intent to cause physical harm to plaintiff;

57. As a result of the defendants unlawful action described herein plaintiff has suffered severe physical and emotional injuries, and loss of income, in an amount to be proved at trial;

58. Plaintiff is further entitled to attorney's fees and costs pursuant to 42 USC section 1988, pre-judgment interest and costs as allowable by federal law;

59. Plaintiff is further entitled to punitive damages because the actions of defendants Tharp and Downey were performed maliciously, willfully or with reckless or wanton disregard of his constitutional rights.

## SECOND CLAIM FOR RELIEF

## (42 USC section 1983-Cruel and Unusual Punishment)

60. Plaintiff incorporates herein by reference all allegations set forth in the other paragraphs of this complaint as if those allegations were set out explicitly herein;

61. The defendants violated the clearly established constitutional duty requiring them to provide necessary medical care for all inmates, including Frey, and violated his clearly established right under the Eighth Amendment to the United States Constitution to be free from deliberate indifference to his serious medical needs;

62. The individual defendants knew Plaintiff had suffered loss of vision in his right eye shortly after he arrived at the Weld County Jail, that he had suffered an abdominal hernia, injury to his right shoulder, and various other painful bruises and contusions to his body, but acted with deliberate indifference in diagnosing and/or properly treating

such serious medical needs thereby recklessly disregarding a substantial risk of physical harm to the plaintiff;

63. The defendants acted in bad faith when they willfully ignored his repeated requests for proper medical attention, especially to his right eye, and intentionally denied and/or delayed his access to necessary medical care;

64. Defendants' deliberate indifference to Plaintiff's serious medical needs was further established when they deliberately ignored the directions of the eye surgeon to keep Plaintiff in the jail medical unit, that he remain in a face down position 50 minutes each hour few for the next several weeks, by transporting Plaintiff to the courthouse just six days after surgery, by releasing him from the jail and transferring him to Denver just eight days after surgery, and generally ignoring many of the directions from the eye surgeon;

65. As a result of the actions of the defendants Plaintiff has lost the vision in his right eye, undergoes constant pain in and about that eye, continued to suffer from an abdominal hernia until recently, and still suffers much pain from his right shoulder injury

66. Further Frey is in danger of losing the sight in his left eye as a consequence of his loss of vision in his right eye, is greatly restricted in his actions because of loss of depth of perception, is greatly restricted in his attempts to continue his trade as a carpenter, and has lost the ability to read, to exercise his artistic skills, and many other skills he possessed before he was injured by the officers;

67. The defendants' actions constitute deliberate indifference to Plaintiff's medical needs, a denial of Plaintiff's right to adequate medical care, and constitute cruel and unusual

punishment in violation of the Eighth Amendment to the United States Constitution, for which the defendants should be held personally liable, for punitive as well as actual damages, and attorney's fees.

### THIRD CLAIM FOR RELIEF

### (Negligence)

68. Plaintiff incorporates herein by reference all allegations set forth in the other paragraphs in this complaint, as if those allegations were set out explicitly;

69. The defendants were negligent, and failed to exercise reasonable care, during the arrest, custody, and care of plaintiff during the period alleged above;

70. At all times material herein the defendants were acting within the scope and course of their employment and official duties and in furtherance of those duties;

71. The occurrence described in this complaint, and the injuries suffered by plaintiff, were a direct and proximate result of the negligence of the defendants;

### PUNITIVE DAMAGES

72. The acts of the defendants described herein were intentional, wanton, malicious, and oppressive and thus entitle Plaintiff to an award of punitive damages.

### ATTORNEYS FEES

73. Pursuant to 42 USC Section 1983 Plaintiff requests this court to award him reasonable and necessary attorney's fees and expenses which he has incurred and will continue to incur during all trial and appellate court proceedings.

**DEMAND FOR JURY TRIAL**

74. Pursuant to Federal Rule of Civil Procedure 38(b) and his right under the Seventh Amendment to the United States Constitution, Plaintiff demands a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays this court to enter judgment for him and against each of the defendants, and to order the following relief:

1. Award plaintiff compensatory, non-economic, consequential and economic damages;

2. Award plaintiff punitive damages;

3. Award plaintiff attorneys fees and costs as provided for under all applicable federal and state statutes;

4. Award plaintiff interest from the earliest possible date under appropriate federal and state statutes;

5. Award plaintiff all other appropriate relief at law and equity.

Respectfully submitted,


s/ Neil MacFarlane
Neil MacFarlane
8098 W. 93rd Way
Westminster, CO 80021
(303) 893-2544
Attorney for Plaintiff

**CERTIFICATE OF REVIEW**

This is to certify that undersigned counsel has conferred, pursuant to Colorado statutes, with a person who has extensive expertise in the areas of alleged negligence and deliberate indifference to serious medical needs and that this professional has reviewed the known facts, including such records, documents, and

other materials as he has found to be relevant to the allegations herein, and has concluded that the filing of these claims do not lack substantial justification and in fact are substantially meritorious and involve clear violations of the standards of care involved.

<u>s/ Neil Macfarlane</u>
 Neil MacFarlane