IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 1:17-cv-00669-LTB-MJW

JAY ALLEN FREY

    Plaintiff,
v.

STEVE REAMS, in his official capacity as Sheriff of Weld County;
NANCY KROLL, in her official capacity as Director of Inmate Services for Weld County Jail;
CORRECT CARE SOLUTIONS LLC, medical provider for Weld County Jail;
DR. MARGO GEPPERT, individually and in her official capacity as employee or contractor for Correct Care Solutions;
GREG THARP, individually and in his official capacity as police officer for the City of Greeley;
WES DONEY, individually and in his official capacity as police officer for the City of Greeley.

    Defendants.

___

## ORDER
___

This civil rights case is before the Court on three different motions to dismiss. First, Defendants Steve Reams and Nancy Kroll move to dismiss the third amended complaint under Federal Rule of Civil Procedure 12(b)(6), arguing it is conclusory, deficient, and partially barred by qualified immunity. (ECF No. 80.) Second, Defendants Correct Care Solutions and Margo Geppert move to dismiss the third amended complaint against them under Rule 12(b)(6), arguing it does not state a claim for relief. (ECF No. 79.) Third, Defendants Greg Tharp and Wes Doney move to dismiss the negligence claim against them, claim three. (ECF No. 78.)

However, after Officers Tharp and Doney filed their Rule 12(b)(6) motion, Plaintiff Jay Frey sought to voluntarily dismiss them from claim three (ECF No. 97), and I entered an order dismissing the officers from that claim (ECF No. 99), mooting the officers' pending Rule 12(b)(6) motion.

As for the other two remaining motions to dismiss, I conclude that Mr. Frey has not sufficiently pleaded a claim for deliberate indifference to his medical needs under 42 U.S.C. § 1983, and I dismiss claim two in its entirety. Nevertheless, because Mr. Frey's § 1983 claim for excessive force (claim one) remains pending, I will continue to exercise supplemental jurisdiction over his state-law negligence claim (claim three).

Thus, I GRANT IN PART and DENY IN PART Officer Reams's and Ms. Kroll's Rule 12(b)(6) motion (ECF No. 80), and I similarly GRANT IN PART and DENY IN PART Correct Care's and Dr. Geppert's Rule 12(b)(6) motion (ECF No 79). In light of the order dismissing Officers Tharp and Doney from claim three (ECF No. 99), their motion to dismiss claim three (ECF No. 78) is DENIED AS MOOT.

## I. BACKGROUND

Unless otherwise noted, the allegations below are taken from the third amended complaint (3rd Am. Compl., ECF No. 74-1), and described in the light most favorable to Mr. Frey.

Mr. Frey tried to evade arrest for a traffic offense by fleeing, on foot, from police in Greeley, Colorado. Greeley Police Officer Tharp eventually found Mr. Frey in a residential area and handcuffed him. Mr. Frey did not resist once Officer Tharp

2

contacted him, nor did he threaten Officer Tharp or try to flee. Nevertheless, Officer Tharp punched and kicked Mr. Frey, struck him with instruments, and slammed his head into a concrete driveway while he was handcuffed. Greeley Police Officer Doney either participated in the beating or did nothing to stop it.

Because of the injuries he suffered during the arrest, an ambulance transported Mr. Frey to a hospital for treatment after his arrest. The next day, he was transferred from the hospital to the Weld County Jail.

Soon after arriving at the jail, Mr. Frey requested medical treatment, complaining about losing vision in his right eye and body pain. He continued to complain to jail officials, particularly about his vision problems, from March through August 2015. Dr. Margo Geppert, through her employer Correct Care Solutions, directed medical services at the jail. She personally examined Mr. Frey. Nancy Kroll, the Director of Inmate Services at the jail, responded to several of Mr. Frey's requests, usually denying them.

Despite his persistent demands, the medical care he received while incarcerated was insufficient. He ultimately lost vision in his right eye because of a detached or torn retina. For any chance to repair the damage, Mr. Frey needed appropriate medical intervention almost immediately after the injury, something the jail did not provide. In addition, jail staff failed to comply with outside doctors' orders regarding Mr. Frey's treatment after Mr. Frey had surgery on his right eye. The severe injury to his right eye means he is more likely to go completely blind because he will overuse his left eye.

3

Mr. Frey also suffered from other injuries from the arrest, including an abdominal hernia, a right shoulder injury, and bruised or broken ribs. Aside from a shoulder X-ray and some painkillers, Mr. Frey received no treatment for the injuries while at the jail. After his release, he needed surgery for the hernia. His arm movement is still restricted because of his shoulder injury.

Mr. Frey asserts two claims for civil rights violations under 42 U.S.C. § 1983 and a state law negligence claim based on his arrest and the medical treatment he received afterward. In claim one, he alleges that Officers Tharp and Doney used excessive force during his arrest in violation of § 1983. In claim two, he alleges that Sheriff Reams, Ms. Kroll, Correct Care Solutions, and Dr. Geppert were deliberately indifferent to his medical needs, also in violation of § 1983. In claim three, he alleges that all defendants were negligent during his arrest, custody, and care and brings a claim under Colorado state law.

Sheriff Reams and Ms. Kroll have moved to dismiss the deliberate indifference § 1983 claim against them under Federal Rule of Civil Procedure 12(b)(6), as have Correct Care Solutions and Dr. Geppert. (ECF Nos. 79-80.) Sheriff Reams, Ms. Kroll, Correct Care Solutions and Dr. Geppert also ask this Court to decline to exercise supplemental jurisdiction over the state law negligence claim if the Court grants their motions to dismiss the deliberate indifference § 1983 claim. (ECF Nos. 79-80.)

Officers Tharp and Doney moved for partial dismissal, asking this court to dismiss the negligence claim against them, claim three. (ECF No. 78.) But after

4

Officers Tharp and Doney filed their motion, Plaintiff Jay Frey sought to voluntarily dismiss them from claim three (ECF No. 97), and I entered an order dismissing the officers from that claim and therefore mooting Officers Tharp and Doney's pending motion to dismiss claim three. (ECF No. 99.)

I now turn to the two remaining motions to dismiss. (ECF Nos. 79-80.)

## II. RULE 12(b)(6) STANDARD

Under Rule 12(b)(6), "[d]ismissal is appropriate only if the complaint, viewed in the light most favorable to plaintiff, lacks enough facts to state a claim to relief that is plausible on its face." *United States ex rel. Conner v. Salina Regional Health Center*, 543 F.3d 1211, 1217 (10th Cir. 2008) (quotation omitted). A claim is plausible on its face "when the plaintiff pleads factual content that enables the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Although plaintiffs need not provide "detailed factual allegations" to survive a motion to dismiss, they must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Ashcroft*, 556 U.S. at 678 (explaining that a complaint will not suffice if it offers "naked assertions devoid of further factual enhancement" (quotations and alterations omitted)). Furthermore, conclusory allegations are "not entitled to be assumed true." *Ashcroft*, 556 U.S. at 679.

5

A court may not dismiss a complaint merely because it appears unlikely or improbable that a plaintiff can prove the facts alleged or ultimately prevail on the merits. *Twombly*, 550 U.S. at 556. Instead, a court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* If, in view of the facts alleged, it can be reasonably conceived that the plaintiff could establish a case that would entitle him to relief, the motion to dismiss should not be granted. *Id.* at 563 n.8.

Granting a motion to dismiss is a "harsh remedy" that should be "cautiously studied" to "effectuate the liberal rules of pleading" and "protect the interests of justice." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotations omitted).

### III. ANALYSIS

#### A. Claim Two—Deliberate Indifference

In Claim Two, Mr. Frey alleges that Sheriff Reams, Ms. Kroll, Correct Care Solutions, and Dr. Geppert were deliberately indifferent to his medical needs, in violation of Eighth and Fourteenth Amendments.

A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment's prohibition against cruel and unusual punishment and states a cause of action under § 1983. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). Pretrial detainees are protected under the Due Process Clause rather than the Eighth Amendment. *Lopez v. LeMaster*, 172 F.3d 756, 759, n.2 (10th Cir. 1999). However, the analysis under the Due Process Clause is the same as under the Eighth Amendment. *See id.*

6

If prison or jail officials prevent or deny an inmate from receiving treatment, or if a medical professional fails to treat an inmate properly, that can constitute deliberate indifference. *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000). Either way, to prove deliberate indifference to serious medical needs, a plaintiff must satisfy objective and subjective components. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). "The objective component of the test is met if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause." *Id.* (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006)). The subjective component requires the plaintiff to show that the defendant disregarded a known risk of substantial harm by failing to take reasonable measures to abate it, *id.*, and requires a "culpable state of mind," *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005).

None of the defendants dispute that Mr. Frey's loss of vision in his right eye is sufficiently serious to meet the objective component of the inquiry. Rather, they dispute whether the third amended complaint sufficiently alleges other aspects of the claim. While their arguments are not identical, they generally fall into the same category: Basically, the defendants argue that the allegations in the complaint do not sufficiently allege that these named defendants participated in the challenged activity. (*See generally* ECF Nos. 79-80.) I address each defendant's argument in turn.

### 1. Dr. Geppart in her Personal Capacity

Dr. Geppart argues that the complaint does not sufficiently allege that she personally acted with deliberate indifference to Mr. Frey's medical needs, and thus

7

does not satisfy the federal pleading standards described in *Twombly*, 550 U.S. at 555, and its progeny. (ECF No. 79.) Even though Dr. Geppart works for a Correct Care, a private company, she does not dispute that she was acting under color of state law for purposes of § 1983 liability. *See generally* ECF No. 79; *see also West v. Atkins*, 487 U.S. 42, 54 (1988) (holding that a physician employed by North Carolina to provide medical services to state prison inmates "acted under color of state law for purposes of § 1983 when undertaking his duties in treating petitioner's injury").

The allegations in the third amended complaint show that Dr. Geppert treated Mr. Frey, albeit unsuccessfully. According to the third amended complaint, Dr. Geppert "personally directed much of Frey's care" and was aware he had no vision in his right eye. (3rd Am. Compl. ¶ 27, ECF No. 74-1.) Mr. Frey also complained to Dr. Geppert about his vision and pain levels several times. (*Id.* ¶ 31.) Dr. Geppert prescribed him eye drops to address pressure that could be causing the loss of vision in his eye. (*Id.* ¶ 28.) She authorized an optometry visit in March, soon after he first arrived at the jail, but the visit didn't happen until June, in part because it was initially cancelled because Mr. Frey could not pay for it. (*Id.* ¶¶ 29, 34, 43.) According to the complaint, Dr. Geppert essentially treated Mr. Frey for glaucoma (a pre-existing condition that had not caused significant problems in the past), instead of treating him for the trauma from his arrest. (*Id.* ¶ 32.)

Mr. Frey also alleges that after he finally had surgery on his eye, various (largely unnamed) jail staff members failed to follow his doctor's instructions that

he be placed in medical unit and lie face down for 50 minutes of every hour. (*Id.* ¶¶ 50-53.) But none of those allegations implicate anything Dr. Geppart did or failed to do.

Even viewed in the light most favorable to Mr. Frey, these allegations do not sufficiently allege that Dr. Geppart was deliberately indifferent to Mr. Frey's medical needs with respect to his right eye. At best, the allegations may show that Dr. Geppart's treatment was unreasonable or even negligent, but they don't show deliberate indifference. *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003) ("Deliberate indifference requires more than a showing of simple or heightened negligence."); *Sealock*, 218 F.3d 1205 (affirming grant of summary judgment in favor of nurse where "[a]t worst, she misdiagnosed appellant and failed to pass on information"). Even assuming Dr. Geppart should have known that treating Mr. Frey for glaucoma was insufficient, failing to "alleviate a potential risk that should have been perceived, but was not, does not satisfy the deliberate indifference standard of the Eighth Amendment." *Verdecia*, 327 F.3d at 1177. None of the allegations in the complaint suggest that Dr. Geppart knew that her course of treatment was likely to cause Mr. Frey harm. To the contrary, she provided him treatment and immediately recommended he see a specialist.

The facts in the complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint cannot merely "le[ave] open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." *Id.* at 561 (quotation marks and alteration omitted). With respect

9

to Dr. Geppart, the facts alleged fail to meet even this forgiving standard. Thus, I dismiss claim two against Dr. Geppart in her personal capacity.

2. **Sheriff Reams in his Personal Capacity**

Sheriff Reams argues that the third amended complaint fails to sufficiently allege that he personally participated in any of the challenged conduct. Indeed, the third amended complaint's allegations with respect to Sheriff Reams only refer to his supervisory role, and only then in a fairly conclusory way. It alleges that Sheriff Reams is "ultimately responsible" for the operation of the jail, that he was responsible for hiring, firing, training, and discipline, and that there was policy, custom or practice, developed under Sheriff Reams, to treat medical matters with deliberate indifference. (3rd Am. Compl. ¶¶ 7, 26, ECF No. 74-1.) These allegations fall short of implicating Sheriff Reams in his personal capacity. *See Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (affirming dismissal of § 1983 claim as a matter of law where plaintiff failed to provide any evidence to link supervisor to the challenged conduct and observing that "supervisor status by itself is insufficient to support liability").

Because I agree the allegations in the complaint are insufficient to state a claim for deliberate indifference against Sheriff Reams, I need not reach his alternative grounds for dismissal, including his argument that he is protected by qualified immunity. I dismiss claim two against him in his personal capacity.

3. **Nancy Kroll in her Personal Capacity**

Ms. Kroll argues that the third amended complaint fails to sufficiently allege that she personally participated in any of the challenged conduct. The third

amended complaint alleges that Ms. Kroll responded to some of his requests for medical help and often denied them. (Am. Compl. ¶ 36, ECF No. 71-4.) It also alleges that Ms. Kroll told him that the treatment Dr. Geppert prescribed for his glaucoma was "the proper and sufficient treatment for his loss of vision." (*Id.*)

Simply alleging that Ms. Kroll denied some of his requests and told him that Dr. Geppert's treatment was appropriate does not demonstrate deliberate indifference. While it is plain now that Dr. Geppert's treatment course was insufficient, it is also plain that Mr. Frey received medical treatment while he was in jail. Ms. Kroll did not deny him any treatment—she just deferred his treatment course to Dr. Geppert's professional judgment.

The other allegations in the complaint do not sufficiently differentiate Ms. Kroll from other unnamed actors. Perhaps the most disturbing allegations—and those that, if true, would likely violate the Eighth Amendment—relate to what happened after Mr. Frey's surgery, when jail staff ignored his doctor's post-surgery treatment instructions. *See Gamble*, 429 U.S. 97, 105 (1976) (holding that "intentionally interfering with the treatment once prescribed" violates the Eighth Amendment). But these allegations fail to describe anything that Ms. Kroll herself did, and they therefore are insufficient to state a claim against her. *See Brown v. Montoya*, 662 F.3d 1152, 1165 (10th Cir. 2011) ("[I]t is particularly important in a § 1983 case brought against a number of government actors sued in their individual capacity that the complaint make clear exactly who is alleged to have done what to

11

whom as distinguished from collective allegations." (quotation and alterations omitted)).

I thus dismiss this claim against Ms. Kroll in her personal capacity as insufficiently pleaded, and I decline to reach any of her alternative arguments for dismissal.

4. Correct Care Solutions and Dr. Geppart in her Official Capacity

Mr. Frey also brings a claim for deliberate indifference to his medical needs against Correct Care Solutions and Dr. Geppart in her official capacity., Correct Care does not dispute that it was acting under color of state law for purposes of § 1983 liability. *See generally* ECF No. 79. I accordingly analyze this claim as if Correct Care were a state entity. And because a claim against Dr. Geppart in her official capacity is the equivalent of a claim against Correct Care, my analysis below, which only refers to Correct Care, applies equally to her in her official capacity. *See Kentucky. v. Graham*, 473 U.S. 159, 166 (1985) (explaining that official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent") (quoting *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690, n.55 (1978)).

Correct Care is not liable under the doctrine of respondeat superior in a § 1983 suit. *Monell*, 436 U.S. at 690-91. But Correct Care could be liable if Mr. Frey sufficiently alleges a municipal liability theory. To establish municipal liability under § 1983, a plaintiff must demonstrate: (1) an underlying constitutional violation; (2) that a municipal policy or custom exists; and (3) that there is a direct

causal link between the policy or custom and the injury alleged. *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006).

Correct Care does not dispute that Mr. Frey suffered a constitutional violation, but it argues that the deliberate indifference claim against it should be dismissed because Mr. Frey has not sufficiently pleaded that Correct Care's policy or custom caused the deprivation. The Tenth Circuit has described several types of actions which may constitute a municipal policy or custom:

> A municipal policy or custom may take the form of (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (quotations and alteration omitted).

The third amended complaint is threadbare when it comes to allegations about a policy or custom, containing only conclusory language—which I need not accept as true—that Correct Care "has established a policy, custom, or practice of being deliberately indifferent in providing medical care to the inmates, and in failing to train or monitor the staff it employs and/or supervises in providing such care." (Am. Compl. ¶ 59, ECF No. 74-1.) It describes other instances where Correct Care failed to provide adequate medical care, but none of these instances were at the Weld County Jail. (*Id.* ¶¶ 60-64.) Describing a few instances of inadequate care

13

in several different facilities does not establish that Correct Care had a custom or policy of failing to provide adequate medical care.

Perhaps tacitly recognizing the deficiencies in his allegations, Mr. Frey argues that I should allow the suit to proceed on naked allegations because, without discovery, Mr. Frey does not have access to information that would support the claim. Adequately alleging municipal liability under § 1983 can certainly be challenging, but the pleading requirements under *Twombly* are not negotiable. Mr. Frey has not pleaded enough facts to push his claim against Correct Care into the plausible realm, so I must dismiss it. *See Twombly*, 550 U.S. at 557 n.5.

### 5. Sheriff Reams and Ms. Kroll in their Official Capacities

Mr. Frey also brings a claim for deliberate indifference to his medical needs against Sheriff Reams and Ms. Kroll in their official capacities. As a threshold matter, I note that a suit against Ms. Kroll in her official capacity is duplicative of a suit against Sheriff Reams in his official capacity. An official capacity suit is a way of pleading an action against an agent or officer's employer. *See Graham*, 473 U.S. at 166. For both Sheriff Reams and Ms. Kroll, that entity is the Weld County Sheriff's office.

The claim against Sheriff Reams and Ms. Kroll in their official capacities is analyzed under the same *Monell* framework as the claim against Correct Care. Once again, Mr. Frey provides only conclusory allegations of a municipal policy or custom, which fall short of the detail required to sufficiently plead a claim for municipal liability. *See Twombly*, 550 U.S. at 557 n.5. I accordingly dismiss this claim against Sheriff Reams and Ms. Kroll in their official capacities.

B.  Claim Three—Negligence

In Claim Three, Mr. Frey alleges that Sheriff Reams, Ms. Kroll, Correct Care Solutions, and Dr. Geppert were negligent during his arrest, custody, and care. The defendants ask me to decline to exercise supplemental jurisdiction over this claim because I dismissed the other claim against them. The only federal claim still pending in this case is a § 1983 excessive force claim against Officers Tharp and Doney.

Supplemental jurisdiction is governed by 28 U.S.C. § 1367. Section 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction over a state-law claim related to the federal claims in an action if the court "has dismissed all claims over which it has original jurisdiction." The defendants' argument for dismissal overlooks the fact that the § 1983 claim for excessive force is still pending against their co-defendants. *See Jarzyna v. Home Properties, L.P.*, 763 F. Supp. 2d 742, 753 (E.D. Pa. 2011) ("Even though the Court dismissed the one federal claim brought against Defendant L.P., the pendency of federal claims against co-defendant FCO permits jurisdiction."). In light of the pending § 1983 claim against Officers Tharp and Doney, the exercise of supplemental jurisdiction over the negligence claim is warranted. *See Jarzyna*, 763 F. Supp. 2d at 753; § 1367.

## IV. CONCLUSION

Mr. Frey has not sufficiently pleaded a claim for § 1983 deliberate indifference claim (claim two) against any of the defendants. However, his § 1983 excessive force claim (claim one) remains pending against Officers Tharp and Doney, so I will continue to exercise supplemental jurisdiction over his state-law

15

negligence claim (claim three) against Sheriff Reams, Ms. Kroll, Correct Care Solutions, and Dr. Geppert.

I accordingly rule as follows:

I GRANT IN PART and DENY IN PART Officer Reams's and Ms. Kroll's Rule 12(b)(6) motion (ECF No. 80). Claim two is dismissed against them, but claim three is not.

I similarly GRANT IN PART and DENY IN PART Correct Care's and Dr. Geppert's Rule 12(b)(6) motion (ECF No 79). Claim two is dismissed against them, but claim three is not.

In light of the prior order dismissing Officers Tharp and Doney from claim three, their motion to dismiss claim three (ECF No. 78) is DENIED AS MOOT.

Dated: January  29 , 2018 in Denver, Colorado.

BY THE COURT:

s/Lewis T. Babcock
LEWIS T. BABCOCK